Church of the Archdiocese of New Orleans. And Mr. Mintz is listed as counsel for the Church as Appellant. Hello again. Thank you, Your Honors. Your Honors, may I please ask the Court, Mark Mintz, on behalf of the Appellant, Roman Catholic Church of the Archdiocese of New Orleans, I'm joined at counsel table now by Laura Ashley. Your Honor, much like the last appeal that we just listened to and just argued, I want to focus on three primary issues. First is plaintiff's or minor children's lack of appellate standing, again. Second is the interlocutory nature of their appeal. And the third is waiver. A couple of things to keep in mind. Again, now that we're in a slightly different procedural posture, it's important to remember the order on appeal is the bankruptcy court order, denying the lifting of the stay or denying the comfort order to lift the stay. This Court, sitting as a second review court, reviews that order and not the district court order. Decisions of the bankruptcy court concerning the scope or applicability of the automatic stay are to lift the automatic stay. However, maybe it's overturned for abuse of discretion only. Your Honors, procedurally, like the last case, this case turns on standing. And it turns on appellate standing. The plaintiffs lacked appellate standing under the person who grieved test in the district court. And that's an important point. In the district court. There's been arguments about that the Archdiocese may have waived that argument because we didn't raise it in the bankruptcy court. This is not an Article III standing. This is not something that we waived then. We brought it up to the district court when the appeal occurred. So for the record here, just because it is a separate appeal, we know that the person who grieved test requires an appellant to show that she is directly, adversely, and Such standing must be connected to the exact order being appealed. Plaintiffs cannot point to their direct financial impact of the dial-up-stay motion. That's because they don't have one. Plaintiffs' response to this obvious flaw in their standing is to first claim a waiver. Talked about it. The second argument is that they have a pecuniary interest in not being Now, of course, they've disclaimed damages in this case. But moreover, the mere threat of sanctions is insufficient to meet the person who grieved test in this circuit. So we talked about Highland Capital in the last appeal. We're going to talk about Highland Capital again. And in the Highland Capital July 2023 opinion, and I wish they were not all Highland Capital, you can't rest a person who grieved standard on a series of ifs. And in that case, we have a series of ifs. It cannot be person who grieved exists simply because if this happens, I might have sanctions. At Highland Capital, it was especially egregious. I think they went through seven ifs. I can go through four ifs. If this court reinstates the stay, if we file a motion for sanctions, if sanctions are available under 362K and how those work with regards to corporate debtors, and if the court eventually orders some sort of sanctions, then there would be a financial impact. But those are at least four ifs that this court or the plaintiffs have to get through before they get to a direct financial harm that is insufficient under the person who grieved test under Highland Capital. Finally, with regards to the standing issue, I think it's important to also talk about kind of a different version, but it's important here, and that's the party who grieved test. Your Honors, what happened here, of course, is that there was a motion for a comfort order. So there was a lawsuit filed, we believe in violation of the stay, that there was a motion for a comfort order that was then filed. Case had been removed, it had been remanded, and then they proceeded with it. Counsel opposite stood up in the bankruptcy court and first said, I am here during the hearing because I don't want to be sanctioned. That was why he showed up. Claimed the court had no jurisdiction. Then the court continued the hearing, and then to ask us to continue to talk about the issues. We did talk about the issues. At the continued hearing, counsel did not show up. He is not a grieved. Second procedural issue, Your Honor, is the order is interlocutory. This was a denial of a lift stay without prejudice. The Supreme Court cases that have been cited do not talk about and specifically disclaim ruling that a denial of a lift stay without prejudice is what they were ruling on. That's not what they were talking about. This is like the con case that was cited in our materials. We think that case is directly on point, and it shows that without prejudice means they could have come back. If the harm that they had stated was that they no longer needed a preliminary injunction for had been dissipated. Remember, we agreed. We removed the questions. The harm was no longer ongoing. They no longer intended to go for a preliminary injunction, and then they appealed, and now they say that there is new harm. But, Your Honor, that was the entire point. Go back to bankruptcy court. But that is what the bankruptcy court did. That's why this is interlocutory. So the district courts and circuit courts do have the ability to hear interlocutory appeals, but the district court, first of all, the plaintiffs must ask for a leave. When I know the district courts seem to be unaware of the impact of the automatic stay here. I think that's also true, and I don't know why. I wish I did know why, but the district court. It wasn't brought up. Well, I think it was brought up, so we can talk about waiver because I think it adds to the waiver point. So as we talk about, I do want to say this before I lose my place on it, Your Honors, which is the interlocutory nature of the district court must find specifically that 1292B factors have been met, and the district court did not do that. Now it gets to the waiver, and Your Honor, again, I know we don't like to read from it, but this was the sole issue on appeal in front of the district court. The sole issue on appeal was whether the bankruptcy court has jurisdiction to enforce the automatic stay for a lawsuit not conceivably related to the debtor's bankruptcy case. That was their sole issue. This court has held in Gallas that a creditor waives issues not designated on appeal. Again, Gallas was cited by Highland Capital from the January 2023 Highland Capital Judge King to be clear that this court in Highland Capital affirmed Gallas' rejection of the notion that a statement of issues on appeal should be read broadly. And so the issue that was raised was the jurisdiction of the court to look at the automatic stay when the case had been remanded. Not does the automatic stay apply. And the automatic stay is not, and I think this is an incredibly important point, is not limited to cases in which there is federal jurisdiction. The automatic stay applies to all entities. It applies to state court. If we never removed it, the automatic stay would still apply. Jurisdiction and the automatic stay have nothing to do with each other. The answer that Judge Ash came up with at the beginning when answering that question as to whether the district court had jurisdiction to consider, or the bankruptcy court, I apologize, had jurisdiction to consider the automatic stay, that question he answered correctly. Yes, of course it does. 157 doesn't confer jurisdiction, but 1334 does. And 28 U.S.A. 1334 says, the district courts of the United States have original but not exclusive jurisdiction over matters that arise in. Whether the automatic stay applies arises in a bankruptcy. Or under, I do get those two confused, but it's one of those two. And so the point, Your Honors, is, and we know that because of 157b, so the point, Your Honors, is, but then they kept going. Most of the rest of the brief from appellant's, or I'm the appellant here, plaintiff's opening brief was related to that. On reply, they now started talking about, well, wait, the stay never did apply. We did not have opportunity at that point to start arguing those points. Judge Ash issued his opinion. We have came up here. We think that he gave, you know, quite frankly, I would say, a little bit of a short shrift to the interlocutory nature. We think that's important. He did not, on our motion to dismiss, he, Judge Ash, did look, and I think intuitively he was using, you know, abbot laps, or he was using constitutional standing arguments to say, yes, there is standing. Outside of bankruptcy and outside of this circuit court's precedent, we do allow speculative-type harm to suffice under the Article III standard, but as this court has held time and time again, bankruptcy appellate standing is a more exacting standard. It requires direct financial hardship, and it must be specific, and that has happened in every single case that we have seen. I do want to talk about the merits if we have to get there. I think it's important to state it. I've touched on it already. Of course, the automatic stay prohibits actions under A1 through 62A1 that could have been commenced prior to the bankruptcy and under A3 to obtain control of property of the estate. And, Your Honor, both tests are met, or both subsections are met here. The state court action could have been commenced prior to the bankruptcy. As explained in the affidavit of Raynell-Houston, which is what the bankruptcy court relied on, the questions on the application the plaintiffs complain about have been on the application since before the petition date. It stands to reason that if the questions are illegal and have been on the application since before the petition date, then the lawsuit could have been filed. And that's the key. Could it have been filed? I don't quite understand that, frankly, because what you've got, it's a class action, right? Yes. And you've obviously got some children from year to year who aren't going to the school or aren't applying or whatever. It's sort of a vacillating class. So it just seems to me that at best, you would have a pyrrhic victory on this because there are clearly some children who either didn't or couldn't have applied pre-petition. Well, I think that may be true, Judge. But what is also true is that the questions have been removed. At that point, it becomes moot. And so what has been complained of and the reason they wanted to lift the state to proceed with the preliminary injunction, those have been moved, removed. So at that point, it becomes moot regardless. But under 362A3 is where the rubber really hits the road because there they are exercising control of property of the estate in the sense that they are seeking the attorney's fees. And the attorney's fees will come from the estate. There is no question about that. There's no one else it could come from. And so that is property of the estate, the money that they will seek. Isn't there case law against that position? And I think there is case law for it. We do cite the San Bernardino case and we think that's an important point. The distinguishment that Judge Ashe issued on the San Bernardino case was, well, there was an adversary proceeding where these people could go after. But that's also the choice that minor children could have made or plaintiffs could have made. They also could have filed an adversary proceeding and proceeded. They could say we're disclaiming the attorney's fees and going to the bankruptcy court and saying, this happens all the time in bankruptcy, which is we want to lift the state to proceed on merits. Bankruptcy court, you were not competent to handle or the best thing to handle this lawsuit. We'll come back to you for damages. They could have done all of those things. But that's not what they did. They wanted to lift the state in its entirety. And so in that sense, Your Honor, we would ask that the bankruptcy court order be affirmed and the case be dismissed for lack of standing. Okay. Thank you. Mr. Edmonds. Good morning, Your Honor. Good morning, Your Honor, and may it please the court. Chris Edmonds on behalf of the appellee's minor children, in this case, ER, who is a 16-year-old girl with cerebral palsy and a wheelchair user, and BR, who is a nine-year-old boy with dyslexia. Let me just ask you a question that I just thought. So you're saying if mom and dad applied for these kids to go to the Catholic, to the parochial school, and didn't say a word about the child with cerebral palsy, probably in a wheelchair, probably with severe communications, very likely an ADA student, does the—is that of no moment to the church, to the school, private school? Do they get all the federal money for health aids and instructional aids and all that kind of thing? So, Your Honor, there's a lot to unpack in your question. I will start off by addressing the first point, which is that these are not children who are—have, as you described it, communications issues. ER, for example, it's in the record, was at another private school. She is an honor roll student at that private school. So the second part of your question that I'll answer is that this is not governed—we're not filing a federal lawsuit. Louisiana state law, Louisiana revised statute 46-2254-B3 and 51-2247, two separate statutes, the latter is the Louisiana Human Rights Act, and the former is the Louisiana Civil Rights Act for Persons with Disabilities. We allege both of them prohibit these types of questions. Now, the Civil Rights Act, this is 46-2254, explicitly says if you receive state money, if you're a private school that takes money from the state of Louisiana, you cannot ask questions about prospective students' disabilities. And that is exactly what Catholic schools were doing until we filed our lawsuit. And the reason that state law—by the way, the archdiocese receives somewhere between—we haven't gotten discovery on this, but the public records show it's somewhere between $20 million to $100 million a year from the state of Louisiana. So with that, I'd like to turn to the issue in this case. Sure, thank you. So first, as a very brief housekeeping matter, Your Honor, we filed a motion to dismiss as frivolous. The motions panel denied that motion, but it did carry with the case our motion for we would re-urge that motion. We think it's particularly appropriate here given that you are acting as a second level of review. This case has already received one level of appellate review. The second part about that order from the motions panel is that it purports to say that there's a motion pending from the archdiocese for attorneys' fees from having to respond to our motion. But there is no such motion pending because the archdiocese did not file a motion for attorneys' fees. That does not comply with Rule 27. He's not—they're not talking about the archdiocese. They're talking about your attorneys' fees. No, they—the motions panel in its order says that it was carried with the case the archdiocese's motion, but the archdiocese did not file a motion. There is no motion pending. If the archdiocese wants to seek attorneys' fees, they're free to do that, but they have to file a motion under Rule 27. Okay, we're fine. Okay. So first, very briefly on the standard of review, I think generally we agree that the scope of the automatic stay is a legal question that is reviewed de novo. There were no factual findings by the bankruptcy court. She did not hear any live witnesses. She has the same record that Judge Ash had before him and the same record that Your Honors have before you. Where did you argue the scope of the automatic stay? I'm glad you brought that up, Judge. Yeah, well, that's critical. So are you talking about the bankruptcy court or the district court appeal? Did you—I mean, obviously— Because we did it in both. Well, clearly it was an issue in the bankruptcy court, but they say that your notice of appeal to the district court only talked about the jurisdiction of the bankruptcy. Yeah, so this is really getting to the nub of the case, okay? The Archdiocese has argued and continues to argue, for reasons that escape me, that our position was that the bankruptcy court did not have jurisdiction to consider the applicability of the automatic stay. In other words, the bankruptcy court, as soon as the remand order took effect, that the bankruptcy court was suddenly deprived of jurisdiction to rule on our motion for a comfort order. That is ridiculous, and that is never once what we argued. We made it explicit. We filed the motion. Why would we file a motion with the bankruptcy court and then turn around and say, never mind, Judge, you don't have jurisdiction to consider our motion? That's crazy. What we asked for was a comfort, a declaratory judgment, essentially, taking a look at the pleadings, taking a look at the law, and applying the law to those pleadings and saying, yes, the automatic stay doesn't apply. And we filed that motion before Judge Guidry entered his remand order, okay? So in our remand order, and this is important, too, we made various bases for remand. First, we argued that there's no jurisdiction under 1334B. Second, we argued that even if there is jurisdiction, you can abstain either under permissive abstention or mandatory abstention under 1334C, okay? And in that case, if a district court remands under 1334C, it means I, the district court judge, have federal jurisdiction under 1334B, but I am abstaining either because I believe it's appropriate or because I am required to by Congress. In that type of case, there is federal question jurisdiction over that case, but the district court has no authority to consider the merits. The state court has to consider the merits. And in that type of case, as Mr. Mentz correctly noted, the automatic stay may apply because there is federal jurisdiction over that case. But it is nonsensical to argue that a case that lacks any jurisdictional hook can somehow be subject to the automatic stay. And this is what I got at. This is what I was arguing in our reply brief to the bankruptcy judge. And I said, Judge, let's give an example that, you know, the debtor is in Chapter 11, one of the trucks runs into a pedestrian or has a rear end, and the victim files suit in state court. Does the victim have to go through the, under your reasoning, does the victim have to go to the bankruptcy court and say, may I file this lawsuit for this post-petition accident? Judge, that is a great question, and I'm glad you asked that, because I was advised by a lot of people. They said, why are you doing this? You should just go, you know, litigate your lawsuit. Why are you going in and making an issue out of this with the bankruptcy court? And the answer, Your Honor, is that Mr. Mentz and his law firm threatened me with sanctions if I tried to litigate the state court lawsuit. And I think, as this Court knows from Mr. Trahan's case, those sanctions can be quite significant. So even though I was extremely confident that the automatic state does not apply, I do not even, if there's an even .01 percent chance that I could get sanctioned to the tune of hundreds of thousands of dollars, obviously, I'm going to try to get some comfort and say, Your Honor, please. And that's why this happens in other cases. That's why the term comfort order comes about, because. Well, but in the terms of the comfort order, you are not acknowledging bankruptcy court jurisdiction. That's right. So the bankruptcy court under section, the jurisdiction to consider a motion for a comfort order comes from section 105, which is just, or section 103. We know 105. 105, yeah. Just the bankruptcy court's general jurisdiction to issue declarations, right? So again, we've always, we submitted ourselves to the jurisdiction of the bankruptcy court to consider our motion for a comfort order. We simply believe that she got it wrong. And that's what we appealed to the district court. And there were two issues, two broadly issues before the bankruptcy court. Number one, does it apply? And number two, even if it does apply, there's good cause to lift the automatic stay. Now, the issue that Mr. Mintz is talking about with mootness, she, I assume, said, well, I'm not going to lift it because it looks like they've removed these questions. But that's an issue that if those circumstances change, let's say they put them back in, yeah, we can go back later and seek relief from the judge and say, yeah, they removed them, but they put them back in. So we should get relief from the stay. But we didn't appeal that ruling. We appealed the legal question, not the equitable question of whether cause exists to lift the stay. We appealed the purely legal question of whether or not the automatic stay applies. And that's the only question that we appealed. And that is what Judge Ash ruled on. Now, they argued that we somehow waived this issue by failing to put it in the issues presented for review. But there's two things. First of all, the Glaz case is very clear that you don't, you know, the fact that you could have articulated the issue a little bit more clearly does not matter. You're not trying to, this isn't an exercise in pedantry is the term. Well, actually, there's a lot of pedantry involved in determining the scope of 1334B and 362. Sure. Sure. But I think, Judge, it's very clear that what happened here, regardless of whether you think Judge Guidry's remand order was correctly decided, he remanded. And there's no federal jurisdiction over this case. And the Walker case and the PFO global cases that we cited in our brief, they all stand for this very plain proposition, which is that bankruptcy courts derive all of their power from the district court. If the district court doesn't have any power to do anything, then the bankruptcy court doesn't have any power to do anything. Yet Judge Graybill in the bankruptcy court conjured a jurisdictional universe where she enjoys powers above and beyond that of 1334B. In other words, she said that 11 U.S. 60, excuse me, 11 U.S.C. 362 confers some sort of independent jurisdictional grant. That is not true. And the Supreme Court has been very diligent about reining in jurisdictional language. And it says you can only find jurisdictional grant if it is clearly, if a statute is clearly intended to grant jurisdiction. And there's no, they don't cite a single part of 11 U.S.C. 362 that purports to confer any independent jurisdiction. If a bankruptcy judge is looking at 362, it presupposes that this case is related to the bankruptcy under 1334B. It's as simple as that. The bank, the district court has no power, so you have no power. I'd like to turn to standing, if there's no further questions about that. So the first thing is that they waive standing because they didn't raise this issue in the bankruptcy court. Their argument is that we lack a pecuniary interest, a money interest in an order for a comfort order. Well, why didn't they make that argument in the bankruptcy court? We cite cases in our brief where district courts, or excuse me, bankruptcy courts have ruled that a party lacks bankruptcy standing. Remember, bankruptcy standing is not Article III standing. It's this prudential requirement which can be waived. Article III standing can never be waived. But prudential standing can be waived, and they waived it because they didn't raise it in the district court, or excuse me, in the bankruptcy court. They raised it for the first time in the district court. And this is important to mention because they argue that there's some distinction. Oh, we're saying bankruptcy standing is an appellate doctrine. No, it's not. It's whether or not you have an interest in getting an order, whether in the bankruptcy court or on appeal, right? The issue is exactly the same in the district court. Determining whether or not we have a pecuniary interest is exactly the same in the district court on appeal. Your clients don't have a pecuniary interest because they didn't ask for damages, so. That is not true. All right, so let's unpack this a little bit. And if they do, I mean, it is true because you made a big point of that, right? No, Your Honor. Before I turn to that question, I am going to turn to that question. The, excuse me, bankruptcy standing, the concept of bankruptcy standing does not apply to motions or for stay relief motions, right? So if we are the ones moving in the bankruptcy court, we're the ones seeking relief. It doesn't make any sense to say you don't have any standing. I mean, unless you're arguing Article 3 standing. It doesn't make any sense to say we don't have any bankruptcy standing. We're the ones filing the motion. Also, we cite cases in this court's case law that say that Congress granted standing to debtors to seek a sanctions action against people who allegedly violate the automatic stay. It would be absurd if the archdiocese had bankruptcy standing to pursue an automatic stay violations, but we didn't have any standing to challenge the basis of the stay. Well, your argument would be that they didn't have such standing. No, I don't know. My argument would be that we didn't, my argument would be they would have standing, but my argument would be to the merits, a substantive issue that we didn't violate the automatic stay. You have standing to bring the action, but we would defend it on the merits. Right. So that's, so to get to your point about our pecuniary interest, first and foremost, we obviously have a pecuniary interest in not being sanctioned, and it's very clear we cite a whole line of Supreme Court case laws saying that we don't have to, we don't have to take some action and then threaten them to pursue a sanctions action against us. Right. That's not what the law says. That sounds, I mean, I sort of agree with the series of ifs that you, I guess that he stated at the beginning, you know, you're saying we're going to file this lawsuit in state court and they say, well, we'll, we'll claim that you're violating the automatic stay, and then you, you say automatic stay doesn't apply because it's postpetition and we're not seeking property of the estate, and then you file it and then they make a motion in the bankruptcy court and you challenge the jurisdiction of the bankruptcy court. No, I wouldn't be challenging the, I mean . . . Of course you would. Right. But see, this, the, the method that you're proposing is, is, is, is obviously not efficient, not to say that that, that gets to the merits of the question, but if, if this doesn't, if let's say . . . I mean, we don't even get to sanctions unless, A, there's a violation of the automatic stay, but we don't even get to that if it was postpetition and the state didn't apply. Right. Well, Your Honor, I, I'm going to rely on the MedImmune cases, the MedImmune case from the Supreme Court and those other cases that say, you do not have to, you do not have to put yourself in front of a moving truck to get an injunction. Normally you can't manufacture standing with an attorney's fees. I mean, this is sort of the flip side of that, but . . . We're not, yeah, we're not manufacturing, they, they threatened us with automatic stay sanctions. But that doesn't mean they can get it. I'm not saying they will. Sure, but this is about whether or not we're entitled to a comfort order. This is not about whether or not we actually violate . . . Let's assume the stay applies, then there's a whole other question of whether or not sanctions are appropriate. But to get to your point about disclaiming damages, we disclaim damages because we, we, this is alleged as a class action. How would we possibly calculate the damages for a class action when you're talking about hundreds, potentially thousands of, of students, right, who each have very, very different injuries? This is not like an oil spill where you can kind of say, well, you were this far away and you were, everybody has very different circumstances. That's ridiculous. What you, what you're suing about is to get certain questions eliminated from the, uh, admissions policies, right? Yes. Right. But the, the damage . . . But you just, you just claimed it. I'm playing. Yes, Your Honor, the, the statute, the fact that we disclaimed damages does not mean we're not suffering economic harm. And this is in the record. So two things. First of all, the, this, the Louisiana statutes themselves provide for damages. So the fact that we elected to disclaim a particular remedy does not mean that we don't have an economic interest in, um, obtaining adjunctive relief. In other words, adjunctive relief will afford these young students, uh, a monetary benefit because every, it's common sense that getting an education is going to help you economically. That's the first thing. Second thing is, and this is in the record, that these schools, the archdiocese has what's called an exceptional learners program where they actually charge students who have disabilities and not the types of disabilities Your Honor is thinking about. I'm talking about more like ADHD and, and things of that nature where kids might need a little bit extra time. They actually charge these students money, extra tuition to, to obtain these accommodations that they're supposed to be providing for free. So we absolutely do have an economic interest. But as I said, they waived this issue. They had every opportunity to raise it in the bankruptcy court and they didn't. And this, this, uh, court's line of cases is very clear that bankruptcy standing is a prudential, um, prudential doctrine. It's not Article III standing. It can be waived. And they waived it. They never explained why they didn't raise it in the district court, excuse me, in the bankruptcy court. I have a whole lot of other arguments, but I didn't get to the merits at all because we, we spent all this time on this. So if you, if the court has no other questions . . . . . . I don't think so. I don't. I guess not. Thank you. Your Honors, and please record, I want to talk about a couple of things that I think are important as we, uh, get through. Uh, this, the first is to touch back on the jurisdiction, or the standing argument, because it's an important distinction, I think Your Honors know. The person who grieved test is an appellate doctrine, and it deals with appellate courts. 1109 deals with person in interest. And that, if that's standing, then fine. That is the issue. Of course, everyone must satisfy Article III standing when they're in front of the court at every level. That's, of course, there. 1109 says that parties in interest may rise and be heard on issues. It defines parties in interest by an example list. Of course, we know example list means it's not everybody. And in the bankruptcy court, we grant additional parties in interest to lots of people. You really just, it's not defined. So we assume that they were a party in interest. They went to the court. They asked for relief from the stay. They certainly, at that point, asserting claims against the estate. They certainly are a party in interest. But then once they make the argument and come up to the appellate court and appeal the order, they must show the financial harm based on the order. That is an appellate standing requirement. That is what Highland Capital. That is what Technical calls. I want to talk about Technical for a second because this is the case that they cite where they say, but the bankruptcy courts have looked at that. Let's remember the facts of Technical. In Technical, there were two different standing arguments that were occurring. The first was the appellate standing, prudential standing. The second was that, and I'm going to miss the name, but let's just say the appellant because I can't remember his name. Did not have constitutional standing at all because he was not a creditor. So the bankruptcy court found that he was not a creditor. He appeals that up. District court finds no standing. Appeals it up. This court finds no standing under the person of grief test. Not, actually this court did both, but did it under both of them. And so that is the exact same issue that we have here. I want to talk about 362A for a second because again, it gets into this jurisdiction and this argument that we just had that it's not a jurisdictional statute. It's not. But 11 U.S.C. 362A says that the filing of petition operates as a stay applicable to all entities. Judge Jones, your question about the truck was right on point. Yes, they have to come to court. The Sixth Circuit has said numerous times in some of these, and I think it's an important case, that creditors proceed at their own risk when they proceed in violation of the standing. Yes, Judge. I hypothesize, of course, post-petition car accident. Okay, post-petition. I would, again, so I think the facts are slightly different. If it's completely post-petition, nothing is there, I think there could be additional questions at that point. Again, depending on how they're asking. But under Craig Storrs, I completely understand how that is. Well, Craig Storrs is post-confirmation, as you know. I understand. I think, I will say this, Your Honor. I think under that point, it's a very good point. Again, if you are seeking the attorney's fees from the estate, and if, by the way, your cause of action is, by the way, what you asked for, you have already gotten, then why are we lifting the stay to allow you to proceed? That's the part that I still can't get over. What they asked for in front of the bankruptcy court was to lift the stay to allow them to proceed to get a preliminary injunction to prevent asking these illegal questions. That was the question. The answer that came back from the bankruptcy court was, it appears you have agreed. Fantastic. No need to lift the stay. They claim that there is a bifurcated order here. There wasn't. There is one order. The bankruptcy court order says that the stay is denied, or the motion to lift is denied without prejudice. So the motion is denied without prejudice. They can come back, which is what they should have done. We would ask for affirmance of the bankruptcy court order. OK. Thank you very much. We are in recess until 9 o'clock tomorrow morning.